**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **ALLIED WORLD NATIONAL ASSURANCE COMPANY,**<br><br>               **Plaintiffs,**<br><br>**v.**<br><br>**MONAVIE, INC. and MONAVIE, LLC,**<br><br>             **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:12cv393DAK** |

Plaintiff Allied World National Assurance Co. ("Allied World") moves this Court to dismiss Defendant MonaVie's Counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional misrepresentation, and declaratory relief as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On May 7, 2013, the court held a hearing on Allied World's Motion to Dismiss. At the hearing, Allied World was represented by Jennifer Mathis and MonaVie was represented by Brian Johnson, Andrew Wright, and Graden Jackson.  The court took the matter under advisement.  Having fully considered the parties' memoranda and arguments and the facts and law relevant to the motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

This is an insurance coverage dispute in which Allied World seeks declaratory judgment that a claims-made insurance policy it issued to Defendant Mona Vie does not

provide coverage for a lawsuit brought against Mona Vie.  Allied World issued Mona Vie

Private Company Professional Liability Package Policy No. 0305-2884 for the claims-

made period from February 1, 2010 to February 1, 2011 (the "Policy").

In March 2008, prior to issuance of the Policy, Mona Vie, a fruit juice distributor,

was sued by an alleged competitor formerly known as Quixtar, Inc. (the "Quixtar

Action").  In its Complaint, Quixtar alleged several claims against Mona Vie for unfair

competition.  Quixtar's claims included a violation of the Lanham Act, state law unfair

competition, tortious interference with economic relations, and trade secret

misappropriation.  Quixtar claimed that Mona Vie improperly recruited its former and

current distributors by inducing them to breach their contracts with Quixtar and

misrepresenting the nature, quality, and characteristics of Mona Vie's products.  To

support the allegation that Quixtar misrepresented its products, Quixtar described Mona

Vie's use of certain doctors and testimonials of famous persons to represent the health

benefits of Mona Vie's products.

Mona Vie subsequently purchased the Policy from Allied World.  The Policy

provided, among other coverages, Directors and Officers Liability coverage, which

provides coverage for "Loss" arising from a "Claim" for an alleged "Wrongful Act" first

made against Mona Vie during the policy period.  The Policy defined "loss" to include

damages, settlements or judgments, interest, costs and fees awarded, "punitive,

exemplary, or multiplied portions of any damages . . . to the extent that such damages are

insurable under the applicable law most favorable to the insurability of such damages,"

and other amounts, including "Defense Costs."  "Defense Costs" are defined as

"reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a Claim," among other items.

After specific communications between Mona Vie and Allied World regarding the Quixtar Action and Mona Vie's needs for future coverage for its general business operations, Allied issued Endorsement No. 3, entitled Specific Litigation/Event Exclusion.

### SPECIFIC LITIGATION/EVENT EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the <u>Directors & Officers and Employment Practices</u> Liability Coverage Section is amended by adding the following exclusion:

This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to:

(i) any of the claims, notices, events, investigations or actions described below (hereinafter **"Event"**);

(ii) the prosecution, adjudication, settlement, disposition, resolution or defense of either an **Event** or any claims arising from or based upon an **Event**; or

(iii) any wrongful act, underlying facts, circumstances, acts or omissions in any way relating to any **Event**.

For the purposes of this endorsement only, the term "Event" shall include the following:
Quixtar v. MonaVie
Simpson v. MonaVie

The "Clause 3, EXCLUSIONS" provision of the Policy provided as follows:

**3. EXCLUSIONS**
This policy shall not cover any **Loss** in connection with any **Claim**:

(f) alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2)

administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(g) alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

After Allied World issued Endorsement No. 3, Mona Vie contends that it received assurances from Allied World that the exclusionary language of the endorsement was intended to ensure that Allied World would not be responsible for any portion of the Quixtar Action, which remained pending at that time. Mona Vie claims that it received further assurance from Allied World that the exclusionary language of the endorsement would not apply to future claims involving Mona Vie's general business operations and strategies.

On December 16, 2010, Mona Vie was sued by a putative class action of customers in a case captioned *Oliver v. Mona Vie, Inc. et al.* (the "Oliver Action"). The complaint in the Oliver Action alleges that Mona Vie engaged in a scheme to market and sell Mona Vie products at inflated prices by advertising false health benefits. The complaint further alleges that Mona Vie recruited so-called medical experts and individuals of notoriety to attest to the allegedly false health benefits of Mona Vie's products.

Mona Vie sought coverage under the Policy for the Oliver Action. Allied World, however, denied coverage based on the exclusions listed above. Allied World also

asserted that the relief sought in the Oliver Action would not qualify as a "loss" under the Policy. Allied World eventually agreed to defend Mona Vie in the *Oliver* action while reserving its rights to reimbursement of any amounts Allied World is not obligated to pay as a loss under the policy.

In April 2012, Allied World filed this declaratory judgment action seeking a declaration that the Policy does not provide Mona Vie coverage for the Oliver Action. Mona Vie answered and asserted Counterclaims against Allied World. Specifically, Mona Vie alleged breach of contract, breach of the covenant of good faith and fair dealing, and negligent or intentional misrepresentation against Allied World. Mona Vie also seeks declaratory judgment that coverage for the Oliver Action is not barred by the policy exclusions Allied World relied on to deny coverage.

## DISCUSSION

### Motion to Dismiss Counterclaims

Allied World moves this Court to dismiss Mona Vie's Counterclaims of breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional misrepresentation, and declaratory relief.

On a motion to dismiss, this Court must accept all well-pleaded facts as true and "decide whether the factual allegations made in the [Counterclaim], if true, would entitle the [Counterclaimant] to some sort of legal remedy." *Grunwald v. Patterson*, No. 2:09-CV-261TC, 2010 WL 417416, at *1 (D. Utah Jan. 28, 2010). To state a viable claim the pleading "must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence that support the plaintiff's allegations." *Shero v. City of*

*Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Based on the allegations in its Counterclaim, Mona Vie argues that this Court must assume the following facts are true:  (1) The *Quixtar* suit mainly alleged unfair competition, interference with business relationships, and that Mona Vie represented inaccurate information about the nature, quality, and characteristics of Mona Vie products; (2) Mona Vie fully disclosed the *Quixtar* action,  Allied World assured it that the policy would cover Mona Vie's general business practices, and Allied World represented that the exclusions precluded coverage for any portion of the *Quixtar* action, which was pending at that time; (3) The *Oliver* action does not allege the above listed allegations of the *Quixtar* action, was brought on behalf of customers, not distributors as in the Quixtar Action; (4) When Mona Vie tendered the *Oliver* claim to Allied World, Allied World limited its investigation to the pleadings and failed to investigate any discovery from either of the *Quixtar* or *Oliver* actions; (5) Allied World continues to deny coverage, without further investigation, based on exclusions that are overly broad and should be construed in favor of coverage.

Mona Vie does not dispute that both actions allege that Mona Vie unfairly competed by falsely advertising the health benefits of its products to consumers. However, Mona Vie points out that the most significant allegations at issue in the Quixtar Action are not found in the Oliver Action.  Specifically, there are no allegations in the Oliver Action that Mona Vie sought to steal a competitor's distributors, violated the Lanham Act, or engage in any kind of tortious interference.  Mona Vie argues that where

the Oliver Complaint borrows from the allegations contained in the Quixtar Complaint, it is by way of example to illustrate a point regarding general business practices.

Although the parties extensively briefed the breach of contract issues first, the court concludes that it should more properly determine the misrepresentation claim first.

**A.   Misrepresentation Claim**

Allied World asks this court to dismiss Mona Vie's counterclaim for misrepresentation as a matter of law.  Mona Vie's main allegation is that Allied World represented that the policy exclusions would not bar coverage for Mona Vie's general business practices and that the exclusion was specifically tailored to the *Quixtar* action.

Allied World asserts that because Mona Vie's misrepresentation claim was not well pleaded, it should be dismissed.  In order to survive dismissal, Mona Vie must allege that Allied World made a false representation of an existing material fact for the purpose of inducing reliance and that the Mona Vie reasonably relied on the representation to its detriment.  *See Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980); *Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004).  Mona Vie alleged in its Counterclaim, and the court must assume it to be true, that Allied World made representations before and after issuance of the policy that Mona Vie's general business practices would be covered and the specific litigation exclusion would only exclude coverage for the Quixtar Action, not future actions that may also assert claims based on general business practices and strategies.[1]  However, Allied World contends that because Mona Vie stated that Allied World said it would not provide coverage for "litigation associated with the

---

[1] *See* Counterclaim ¶¶ 66–72.

*Quixtar* action,"[2] Mona Vie's allegations do not actually state a claim for misrepresentation and the claim in not well-pleaded.

Allied World argues that, on one hand, Mona Vie alleges that Allied World promised that the exclusions would only bar coverage for the *Quixtar* action itself and, on the other hand, that Allied World told Mona Vie the exclusions would bar coverage for litigation associated with the *Quixtar* action.[3] Allied World asserts that these are inconsistent allegations and, therefore, are not well pleaded.  Inconsistent allegations, by definition, are not well pleaded.  *Bryner v. Utah*, No. 208-CV-463-CW-SA, 2010 WL 1253974 at *5 (D. Utah Mar. 24, 2010) ("The court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading."). Allied World asserts that this court should ignore allegations that are internally inconsistent.  *See McKinley Med., LLC v. Medmarc Cas. Ins. Co.*, No. , 2012 U.S. Dist. LEXIS 39667, at *14 (D. Colo. Mar. 23, 2012) (finding that court "need not accept factual claims that are internally inconsistent.").

The court finds that Allied World's assertion that Mona Vie's counterclaim is not well pleaded because one sentence states that Allied World told Mona Vie that claims "associated" with the Quixtar Action would not be covered is unpersuasive.  The court does not find Mona Vie's allegations to be inconsistent.  The Quixtar Action was still proceeding at the time in question and several matters related to and/or "associated" with that action could have still occurred.  It is clear from Mona Vie's Answer and

---

[2] *See* Mona Vie's Counterclaim ¶¶ 22, 65–67.
[3] Allied World cites to Mona Vie's motion in opposition and the counterclaims.  The Counterclaim alleges that "In light of pending litigation, Allied World indicated that it would not provide coverage for the *Quixtar* lawsuit, or litigation associated with the *Quixtar* Lawsuit." Counterclaim ¶ 67.  Mona Vie also asserted that "Allied World represented to Mona Vie and its agents that the purported Special Litigation / Event Exclusion would only be applied to the litigation specifically identified in Endorsement No. 3." Counterclaim ¶ 70.

Counterclaims that it is alleging Allied World represented that Mona Vie's general

business practices and strategies would be covered in future litigation.

Allied World further argues that even if it promised more coverage than it

provided, Mona Vie's misrepresentation claim would still fail because an insured cannot

rely on a representation of coverage that is at odds with what the insured knows to be true

or could ascertain with reasonable diligence.  *See Youngblood v. Auto-Owners Ins. Co.*,

158 P.3d 1088, 1095 (Utah 2007); *Redmund v. State Farm Fire & Cas. Co.*, No. 2:07-

CV-488-CW-PMW, 2010 U.S. Dist. WL 2025591, at *5 (D. Utah May 18, 2010).[4]

The factors to consider when making such a determination are adequately

summarized in *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1095–96 (Utah

2007).  "A party claiming an estoppel cannot rely on representations or acts if they are

contrary to his knowledge of the truth or if he had the means by which with reasonable

diligence he could ascertain the truth."  *Id.* at 1095 (quoting *Perkins v. Great-West Life

Assurance Co.*, 814 P.2d 1125, 1130 (Utah Ct. App. 1991).  The court in *Youngblood* was

sympathetic to those who rely on an agent's misrepresentations, but stated that recovery

was only permitted when reliance was reasonable.  *Id.*  The law requires insurance agents

to accurately represent policy provisions, but insurance purchasers that fail to make the

effort to read and understand the content of their policy do so at their peril.  *Id.* at 1096.

When the relevant policy language is "unintelligible, incomplete, or simply too complex

to be understood by persons of reasonable intelligence" reasonable reliance on the agent's

explanations becomes easier to establish.  *Id.*  "A conclusion that an insurance contract

term is unambiguous . . . is not the end of the inquiry."  *Id.* Moreover, the court in

---

[4] The Plaintiff in *Redmund* stipulated that based on the language of the policy, there was no coverage.

*Youngblood* held that whether an insured's reliance on an agent's representations was reasonable is a question of fact that is to be resolved by a trier of fact.  *Id.*

In this case, to the extent Allied World asserts that despite its representations, a reading of the Policy should have put Mona Vie on notice that a future action such as the Oliver Action would not be covered, the court cannot agree.  At this stage of the litigation, the court cannot conclude that the language of the Policy would provide such notice.  Allied World asks this court to read the language of the Policy as broadly as possible to exclude coverage.  However, under the law, this court must construe the language exactly the opposite. Especially given Allied World's alleged representations, there is a genuine dispute as to the meaning of the language in the Policy and there is no basis for dismissing Mona Vie's negligent or intentional misrepresentation claim.

The parties should proceed with discovery to determine whether Allied World misrepresented coverage and whether Mona Vie's reliance on the representations was reasonable.  Until such facts are before the court, the court concludes it is premature and inappropriate to analyze any of the other counterclaims.  Based on the facts at issue with Mona Vie's misrepresentation claim, the court concludes that none of the other counterclaims can be dismissed as a matter of law at the motion to dismiss stage.  Accordingly, Allied World's Motion to Dismiss is denied.

## CONCLUSION

Based on the above reasoning, Allied World's Motion to Dismiss Mona Vie's Counterclaims is DENIED.

DATED this 12th day of July, 2013.

BY THE COURT:

_____
DALE A. KIMBALL,
United Sates District Judge